<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| THOMAS I. GAGE,<br><br>               Plaintiff,<br><br>               v.<br><br>PREFERRED CONTRACTORS<br>INSURANCE COMPANY RISK<br>RETENTION GROUP LLC, et al.,<br><br>               Defendants. | Civil Action No. 19-20396 (MAS) (ZNQ)<br><br>**MEMORANDUM OPINION** |

<u>SHIPP, District Judge</u>

This matter comes before the Court upon Defendants Preferred Contractors Insurance Company Risk Retention Group LLC ("Preferred Contractors") and Golden State Claims Adjusters, Inc.'s ("Golden State") (collectively, "Defendants")[1] unopposed Motion to Dismiss pro se Plaintiff Thomas I. Gage's ("Plaintiff") Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b).[2] (ECF No. 8.) The Court has carefully considered Defendants' submission and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth herein, Defendants' Motion to Dismiss is granted.

---

[1] Plaintiff brought this action against Preferred Contractors, Golden State, and Affordable Insurance Group, Inc. (*See generally* Compl., ECF No. 1.) Affordable Insurance Group, Inc. is not party to Defendants' instant motion. (*See generally* Defs.' Mot. to Dismiss, ECF No. 8.)

[2] Unless otherwise noted, all references to a "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

I.     **BACKGROUND**[3]

Plaintiff owns and operates a home improvement business in New Jersey called Virtue Builders, Inc. ("VBI"). (Compl. ¶¶ 10–12, ECF No. 1.) Plaintiff purchased for VBI a commercial general liability insurance policy (the "Policy") with Preferred Contractors through a third-party seller, Affordable Insurance Group, Inc. ("Affordable Insurance"). (*Id.* ¶ 15.) On or about July 17, 2019, a heavy rainstorm damaged a retaining wall VBI was hired to construct. (*Id.* ¶ 17.) Plaintiff filed a claim under the Policy for the damage, but Golden State, Preferred Contractors' third-party claims adjuster, denied the claim. (*Id.* ¶¶ 18–21.)

Following the coverage denial, Plaintiff filed the instant twelve-count action against Defendants and Affordable Insurance. (*See generally id.*) Plaintiff's counts, however, are loosely structured and often repetitive. The Court groups them as follows: (1) breach of contract ("Breach of Contract Count"), (*id.* ¶¶ 25–35 (Count One)); (2) private right of action under the New Jersey Unfair Claim Settlement Practices Act ("UCSPA"), N.J. Stat. Ann. § 17B:30-13.1 ("UCSPA Counts"), (*id.* ¶¶ 36–39, 51–64 (Counts Two, Five, and Six)); (3) bad faith and breach of the implied covenant of good faith and fair dealing ("Bad Faith Counts"), (*id.* ¶¶ 40–50, 65–77, 91–102 (Counts Three, Four, Seven, Eight, Eleven, and Twelve)); and (4) fraud ("Fraud Counts"),

---

[3] For the purpose of a motion to dismiss, the Court accepts as true and summarizes the factual allegations of the Complaint, *see Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008), and "generally consider[s] only the allegations contained in the complaint, exhibits attached to the complaint[,] and matters of public record," *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). "[A] court may consider an undisputedly authentic document that [the] defendant[s] attach[] as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Id.* Here, Plaintiff's claims are based on an insurance policy, but Plaintiff only provides its first five pages. (*See generally* Compl.; *see also* Incomplete Policy 1–5, ECF No. 1-2.) Defendants attach this policy in its entirety. (Complete Policy, Ex. A to Daniel Matteoni Aff., ECF No. 8-2.) Plaintiff does not contest the accuracy of the Complete Policy. The Court, therefore, considers the well-pleaded facts in the Complaint and attachments to the Complaint, as well as the Complete Policy provided by Defendants.

(*id.* ¶¶ 78–90 (Counts Nine and Ten)). Defendants now move to dismiss the Complaint for failure to state a claim pursuant to Rules 12(b)(6) and 9(b).

## II.   LEGAL STANDARD

### A.   Rule 12(b)(6)

Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant[s] fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

When analyzing a Rule 12(b)(6) motion to dismiss, the district court conducts a three-part analysis. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court must accept as true all of a plaintiff's well pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The court, however, may ignore legal conclusions or factually unsupported accusations that merely state "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, the court must determine whether the "facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant[s are] liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a motion to dismiss for failure to state a claim, the "defendant[s] bear[] the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

Finally, where a plaintiff proceeds pro se, the complaint must be "liberally construed," and "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted

3

by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007). A pro se litigant, however, "is not absolved from complying with *Twombly* and the federal pleading requirements merely because [the litigant] proceeds pro se." *Thakar v. Tan*, 372 F. App'x 325, 328 (3d Cir. 2010).

### B.      Rule 9(b)

Claims involving fraud are subject to a narrower pleading standard than that of standard claims. These claims "must state with particularity the circumstances constituting fraud" for a court to deem them sufficient. Fed. R. Civ. P. 9(b). The purpose of Rule 9(b) is "to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of . . . fraudulent behavior." *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984). While there are no explicit guidelines for Rule 9(b) pleading, a general rule is that plaintiffs must, at a minimum, "support their allegations of . . . fraud with all of the essential factual background that would accompany 'the first paragraph of any newspaper story.'" *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002) (citation omitted). This includes the "who, what, when, where[,] and how" of the fraud at issue. *Id.* Plaintiffs "need not, however, plead the 'date, place[,] or time' of the fraud, so long as they use an 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud.'" *Rolo v. City Investing Co. Liquidating Tr.*, 155 F.3d 644, 658 (3d Cir. 1998) (quoting *Seville*, 742 F.2d at 791). And while courts should examine claims under Rule 9(b) with flexibility, the ultimate result must be precise notice of the fraudulent conduct. *Id.*

### III.      DISCUSSION

#### A.      Breach of Contract Count

Plaintiff alleges a breach of contract against Defendants for failing to (1) "objectively and fairly evaluate Plaintiff's claim[,]" (2) "reasonabl[y] and properly investigate Plaintiff's claim[,]"

4

(3) "follow the company's established investigation procedures[,]" (4) "hire a qualified structural engineer" to investigate the claim, (5) inform Plaintiff why a structural engineer was not needed, and (6) interview witnesses. (Compl. ¶¶ 29–35.)

To state a claim for breach of contract, a plaintiff must plausibly allege: (1) "that the parties entered into a contract containing certain terms"; (2) "that [the plaintiff] did what the contract required [him] to do"; (3) "that [the defendants] did not do what the contract required [them] to do, defined as a breach of contract"; and (4) "that [the defendants'] breach, or failure to do what the contract required, caused a loss to the plaintiff[]." *Globe Motor Co. v. Igdalev*, 139 A.3d 57, 64 (N.J. 2016) (internal quotation marks and citation omitted).

Here, Plaintiff fails to allege that Defendants breached the Policy. The Policy states that,

> [Preferred Contractors] will pay those sums that [Plaintiff] becomes legally obligated to pay as 'damages' for 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend [Plaintiff] . . . against any 'suit' seeking 'damages' to which this insurance applies, and which is timely reported to [Preferred Contractors] as provided hereunder.

(Complete Policy *10.)[4] Furthermore, the Policy's declaration form states that the Policy's coverages are limited to: (1) "[a] claim asserted by a third party (i.e.[,] a party who is neither an insured, nor related by ownership or management to the Member) where such claim directly substantially relates to an insured's project;" and (2) "[a] claim for a [c]overed [l]oss which is timely and properly reported in accordance with the terms of [the] Policy." (*Id.* at *9 (emphasis omitted).) Plaintiff does not assert that he filed the insurance claim for repayment of damages he was legally obligated to pay to a third party or for a suit he faced in connection with the rain

---

[4] Pages preceded by asterisks refer to page numbers on the ECF header.

damage. Instead, Plaintiff states that he "provided . . . Defendants with undeniable proof . . . of damage, which is believed to be covered under the [Policy.]" (Compl. ¶ 20.)

Furthermore, the Complaint fails to point to a specific provision which Defendants breached. (*See generally* Compl.) Failure to identify a specific provision of a contract that was breached is grounds for dismissal. *Skypala v. Mortg. Elec. Registration Sys., Inc.*, 655 F. Supp. 2d 451, 459–60 (D.N.J. 2009); *see also Franchino v. J.P. Morgan Chase Bank, N.A.*, No. 19-20893, 2020 WL 3046318, at *4 (D.N.J. June 8, 2020) (dismissing pro se plaintiff's breach of contract claim for failing to "identif[y] any specific contractual provisions on which his claim for relief is based").

Plaintiff, accordingly, fails to state a claim for breach of contract, and the Breach of Contract Count (Count One) is dismissed without prejudice. Plaintiff may, however, amend his Complaint. If Plaintiff chooses to amend his pleading, Plaintiff must provide additional factual allegations detailing how Defendants breached the Policy.

### B.    UCSPA Counts

Plaintiff also seeks relief under the UCSPA, alleging that: (1) Defendants violated the statute when they denied Plaintiff's insurance claim, (Compl. ¶¶ 37–39, 58–64 (Counts Two and Six); and (2) Defendants' violation of the UCSPA constitutes negligence per se, (*id.* ¶¶ 51–57 (Count Five)). Plaintiff asserts that Defendants' actions fall under the UCSPA's prohibited practices and that Plaintiff is entitled to damages. (*Id.* ¶¶ 39, 54–56, 61–63.)

The UCSPA does not apply to general liability and property insurance. *NN&R, Inc. v. One Beacon Ins. Grp.*, 362 F. Supp. 2d 514, 524–25 (D.N.J. 2005) (noting that the UCSPA applies to life insurance, health insurance, and annuities); *see also* N.J. Stat. Ann. §§ 17B:30-1, -2. Because the Policy is a general liability policy, (Compl. ¶ 15; Complete Policy *9–10), and not a life or health insurance policy or annuity, the UCSPA Counts (Counts Two, Five, and Six) are dismissed

6

without prejudice.[5] Plaintiff may amend his Complaint. If Plaintiff chooses to amend his pleading, Plaintiff must provide additional factual allegations detailing how the Policy falls under the UCSPA.

### C.    Bad Faith Counts

Plaintiff alleges the Defendants engaged in bad faith and violated the implied covenant of good faith and fair dealing when they denied Plaintiff payment under the Policy without thoroughly investigating Plaintiff's claim. (Compl. ¶¶ 40–50, 65–77, 91–102 (Counts Three, Four, Seven, Eight, Eleven, and Twelve).) "Under New Jersey law, it is well settled that every insurance contract includes an implied duty of good faith and fair dealing." *Am. S. Home Ins. v. Unity Bank*, No. 16-3046, 2017 WL 1488128, at *3 (D.N.J. Apr. 25, 2017). Furthermore, "[a]n insured may pursue a cause of action against an insurer for a bad faith denial of benefits to which the insured is entitled under the insurance policy." *Id.*

"To state a claim for bad faith denial of insurance coverage, Plaintiff must show: (1) the insurer lacked a reasonable basis for its denying benefits, and (2) the insurer knew or recklessly disregarded the lack of a reasonable basis for denying the claim." *Nationwide Mut. Ins. v. Caris*, 170 F. Supp. 3d 740, 748 (D.N.J. 2016). Bad faith claims should be "analyzed in light of a 'fairly debatable' standard, which posits that '[i]f a claim is "fairly debatable," no liability in tort will arise.'" *Id.* (quoting *Pickett v. Lloyd's*, 621 A.2d 445, 473 (N.J. 1993)); *see also Badiali v. N.J. Mfrs. Ins. Grp.*, 107 A.3d 1281, 1288 (N.J. 2015) ("[T]o establish a first-party bad faith claim for

---

[5] Defendants argue that "[i]t is well-settled that there is no private right of action for violation of the UCSPA, and courts will dismiss a private claim for violation for the UCSPA." (Def.'s Moving Br. 20, ECF No. 8-1.) The Court does not think this issue is well-settled and, therefore, does not address this argument. *See PAS v. Travelers Ins.*, 7 F.3d 349, 357 n.8 (3d Cir. 1993); *NN&R*, 362 F. Supp. 2d at 524 n.4; *but see Hocheiser v. Liberty Mut. Ins.*, No. 17-6096, 2018 WL 1446409, at *11 n.8 (D.N.J. Mar. 23 ,2018).

denial of benefits in New Jersey, a plaintiff must show 'that no debatable reasons existed for denial of the benefits.'" (citation omitted)). "Thus, when the insured's complaint presents issues of material fact as to the underlying claim, dismissal of a related bad faith claim is proper." *Caris*, 170 F. Supp. 3d at 748 (citing *Fuscellaro v. Combined Ins. Grp.*, No. 11-723, 2011 WL 4549152, at *5 (D.N.J. Sept. 29, 2011) (granting Rule 12(b)(6) motion because the complaint "neither show[ed] nor adequately allege[d] that [the defendant] lacked a fairly debatable reason for refusing payment on [the p]laintiff's claim")); *see also Am. S. Home Ins.*, 2017 WL 1488128, at *4 (granting Rule 12(b)(6) motion because the defendant's counterclaim "failed to allege facts demonstrating that [the plaintiff] lacked a reasonable basis for denying the claim for coverage, or that it knew or recklessly disregarded its absence of a reasonable basis").

Here, Plaintiff fails to allege that Defendants lacked a fairly debatable reason for its denial of coverage. Rather, the Policy illustrates that Defendants did possess a reasonable basis for its denying benefits. (Complete Policy *9–10 (limiting Plaintiff's coverage to damages payable to third parties and suits seeking damages); *see also* Golden State Aug. 20, 2019 Correspondence 7, ECF No. 1-7 (detailing Defendants' basis for denial of Plaintiff's claim and stating, "there is no coverage for the repair or replacement of any work you performed or to real property upon which you performed operations").) Accordingly, the Bad Faith Counts (Counts Three, Four, Seven, Eight, Eleven, and Twelve) are dismissed without prejudice. The Court, however, provides Plaintiff an opportunity to amend his Complaint. If Plaintiff chooses to amend his pleading, Plaintiff must provide additional factual allegations detailing how Defendants lacked a reasonable basis for denying Plaintiff's insurance claim.

### D.    Fraud Counts

Finally, Plaintiff alleges that Defendants fraudulently "misrepresented pertinent facts" regarding the Policy's coverage to Plaintiff. (Compl. ¶¶ 80–81, 87–90 (Counts Nine and Ten).)

Specifically, Plaintiff alleges Defendants sold Plaintiff a policy that did not include the coverage he required under New Jersey state law. (*Id.* ¶¶ 88–90 ("Plaintiff was misled and defrauded, due to the fact that the policy that was sold to him does not meet the requirements of the purpose for which [it] was purchased.").)

Plaintiff's Fraud Counts do not meet the heightened pleading standard required by Rule 9(b). Plaintiff does not allege a specific misrepresentation made by Defendants, and, instead, makes vague references to Defendants' statements to Plaintiff regarding the Policy's coverage. (*See generally id.* ¶¶ 78–90.) Furthermore, Plaintiff's assertion that the Policy "does not meet the requirements of the purpose for which [it] was purchased" does not adequately demonstrate fraud by Defendants. (*Id.* ¶ 89.) Plaintiff's Fraud Counts, therefore, neither "place the [D]efendants on notice of the precise misconduct with which they are charged," *Seville*, 742 F.2d at 791, nor allege the "who, what, when, where[,] and how" of the fraud at issue, *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d at 217.[6] Accordingly, the Fraud Counts (Counts Nine and Ten) are dismissed without prejudice. The Court, however, provides Plaintiff an opportunity to amend his Complaint.

---

[6] Plaintiff attaches to the Complaint a copy of a 2014 Order issued by the Office of the Commissioner of Securities and Insurance, Montana State Auditor ("CSI") concerning Preferred Contractors. (*See generally* Montana State Auditor Order, ECF No. 1-11.) The Order states that "the Commissioner consider[ed Preferred Contractors] to be in hazardous financial condition[,]" and ordered Preferred Contractors to, *inter alia*, (1) obtain prior approval from the CSI before expanding into additional states and entering into a certain "share reinsurance treaty" with another company; (2) provide the CSI with certain financial information; and (3) conduct and submit to the CSI "an independent actuarial review." (*Id.* at 2–3.) Plaintiff alleges that the CSI Order, as well as another investigation which is not attached to the Complaint, "could well be related in some way to Plaintiff's case as motive of denying Plaintiff's claim" and "need[s] to be investigate[d] in this case." (Compl. ¶¶ 82–84.) It is unclear how an order outside of this Court's jurisdiction pertains to Plaintiff's current allegations of fraud. At most, these allegations vaguely suggest past fraudulent activity by Preferred Contractors. Notwithstanding this uncertainty, the Court finds that these allegations also fail to place Defendants on notice of the precise fraudulent conduct they are accused of in this action.

If Plaintiff chooses to amend his pleading, Plaintiff must provide the necessary details on Defendants' alleged fraudulent misrepresentations.

**IV.    CONCLUSION**

For the reasons set forth above, Defendants' Motion to Dismiss is granted. Plaintiff's Complaint is dismissed without prejudice. The Court will enter an Order consistent with this Memorandum Opinion.

**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**